May it please the Court, my name is Steve Williams with the Joseph Saveri Law Firm. I represent the plaintiffs Frost and Ra. I would like to reserve three minutes for rebuttal. The decision of the District Court made at least three primary mistakes in evaluating the complaint. The first mistake was to apply a heightened pleading standard that the Supreme Court on at least two occasions after Twombly, and in Twombly, has said does not exist. And applying a heightened pleading standard to an antitrust case directly conflicts with that Supreme Court authority and this Court's authority. Yeah, but you know, they're all Rule 8 cases, but everybody and his dog knows that the Supreme than they do in ordinary cases. I mean, it's just the world in which we live. I do not disagree, Your Honor, and my interpretation of it is that what the Court did in Twombly was to say, first, we're discarding any claim to relief. That's not controversial. But the more important part was, as in Kendall, which we're going to talk about what the District Court did was to say, we have to look at what the claim requires in order to decide if the complaint states a claim. And the issue in Twombly, and the issue in Kendall, was how do you interpret a complaint that relies solely on allegations of parallel conduct and no— That true? I thought Twombly involved both parallel conduct and direct evidence. Twombly only involved parallel conduct. The factual setting was telecommunications had been deregulated. The plaintiffs alleged, in a deregulated world, companies should compete. It doesn't look like these companies are competing. And then alleged the conclusion, and obviously they had a few more facts, but then they alleged the conclusion that, therefore, they have engaged in a contract conspiracy or combination. Do you have any parallel—are there parallel conduct allegations in this complaint, or are we dealing only with direct evidence? We're dealing with direct evidence and circumstantial evidence. This is not a parallel conduct case. And parallel conduct cases exist because the courts have recognized for 75 years that direct evidence or even circumstantial evidence in antitrust cases is difficult to assemble because an antitrust conspiracy is illegal. It is a crime. It is committed in secrecy. So to require, as the district court did here, and as the appellees are asking this court to affirm, that you must specify the particular name of a person within a defendant, the particular date when they entered into the agreement. Let me ask you about that because you—I mean, it's interesting that you complain about that because you actually do allege a date in 2005. What's the basis for your allegation that the agreement was entered into in 2005? The basis of the allegation would be the totality of all of the facts that we have at the pleading stage before we have had any discovery. Well, you know, you did have some discovery. Thank you. And I really want to address that because the record submitted by the appellees would suggest to this court something that's not correct, which is we had jurisdictional discovery. No, I understand. And I apologize to interrupt. No, no, no, don't apologize. So here's what I wanted to refer to, though. The excerpts of record they submitted only included the plaintiff's requests. They didn't include any excerpts of record of what they actually produced. They didn't include their responses to our requests, which objected to everything, nor did they include what they produced. So the effort is to try to suggest that, as in Kendall, we had merits discovery. There's no support in this record for that. And what's important in Kendall, what's critically important, because as the argument is made by the appellees, they say, you still haven't answered the questions of who, what, where, when, which it does say that in Kendall, but they leave out the first few words, which say, even after all the depositions that were taken, comma. But it's still a Rule 8. Kendall was a Rule 8, right? Correct. So I guess I don't understand what the, you're just suggesting there's a different standard, depending on how much discovery has actually happened, whether it's jurisdictional. How was Kendall a Rule 8 if there was full discovery in the case? I won't say there was full discovery, but what I will say. Was it more than jurisdictional discovery? Oh, yes, it was. It's actually, if you look at the last three paragraphs of Kendall, it's quite interesting, because the district court decided Kendall before Twombly had been decided. But the district court said, I don't buy the idea that you can simply allege parallel conduct in a conclusion. In fact, the district court applied the standard that Twombly anticipated. So the district court said, go do discovery to get the facts you need to plead your complaint. And more importantly, as it notes in the opinion, when asked, plaintiff's counsel said, we don't need any more discovery. If we do more discovery, we don't think we're going to find anything else. This is our case. It is purely a parallel conduct case, period. Now, the Supreme Court— Can I ask about that in your case? And I know your position is that jurisdictional discovery is not the same as the discovery that happened in Kendall. But your first complaint was dismissed. Then you were given jurisdictional discovery. What additional facts did you put into this? Do you disagree that the district court improperly dismissed your first complaint? No, I apologize. I do not agree, because I think that the mistake is the same mistake in the second, which was to say, you don't have to just say, who were the parties in the alleged conspiracy? You have to identify the particular people within the companies that entered into the agreement. And that is the heightened pleading standard. Rule 8 does not include, the Supreme Court has repeatedly said, is not applicable. I don't read the Supreme Court as saying, you've got to—maybe they do. But I don't see them saying, you've got to tell us who signed the agreement or who entered the oral agreement. But there's got to be—it seems to me that what Twombly does say, and Kendall does say, is there's got to be some evidence or allegations about how this agreement was entered. I mean, and that seems to be what's lacking here. And that's what I'm wondering is, what's the difference, in your view, between what you put into your first complaint and your—I guess, are we dealing with the second amended complaint or the first amended complaint? But the complaint that ultimately is up here now. The second amended consolidated complaint. That's the second amended consolidated complaint. What are the differences between that and prior versions of the complaint? Primarily, and this is a critical fact that the district court's decision never discusses, would be, for example, at E.R. 069, the little materials received in the jurisdictional discovery include a PowerPoint from LG that is in our complaint that the American subsidiary's hiring decisions were controlled by the Korean parent. We allege that factually. It was deemed insufficient. The second time, we put in evidence from the defendant which demonstrates that to be true. And the reason why this is important is because the district court's analysis never considered the explicit allegations of fact that the hiring decisions have to be made in Korea. There is evidence from the defendant saying that. The district's court analysis solely turned on characterizing our allegations as stereotype, which they are clearly not when based on evidence that is in the complaint. Okay. But then even if that were accurate, then you've still got to show that there was an agreement that was entered into in Korea. And so in a weird way, you've sort of moved it from America, you know, to the United States, back to Korea. And what evidence do you have to show that there was an agreement in Korea? The evidence would be, and this is the evidence that is set forth in the complaint, that we would say is direct evidence and circumstantial. That we would say are well-pleaded facts that are not permitted to be disregarded and that we would add are under this court's decision in Star v. Baca, if there's competing interpretations on a motion to dismiss the plaintiff. Written by my colleague here was not an antitrust case though, right? That is correct, Your Honor. But I don't think for this purpose, that makes a difference because as the Supreme Court said in Iqbal, antitrust cases are no different from any other case. Well, yes and no. I mean, actually, if you go read Star and I think it sort of analyzes the differences between these cases and that's to the extent that anyone can sort of project what the Supreme Court is telling us. One of them seems to be these antitrust commercial cases because and maybe for some good policy reasons that the, I don't want to use the word extortion, but the pressure that can be brought to bear through allowing these complaints to go forward is much higher than it is in Star, which was a 1983 case. I understand that, Your Honor. And I think the point in Star that I wanted to refer to was that whether it is a 1983 case or an antitrust case, when at the motion to dismiss stage, there are competing interpretations of factual allegations, the plaintiff prevails. Okay. So just tell me what, so let's go back to my original question. What do you have to show that this was in, and maybe to put a finer point on it, disabuse me of my notion that this was based primarily upon comments that were made and reported 10 years ago in India? Well, I'd like to, so first of all, that is not true. In terms of the timing, the case was filed in 2006. Okay, so six years ago. And first, Mr. Frost works for LG. He's contacted by a recruiter who says, would you be interested in working for Samsung? Who then contacts him again and says, I'm sorry, I made a mistake. I'm not supposed to poach LG for Samsung. The two companies have an agreement. They don't steal each other's employees. Second. And that happened in what, in 2005? No, Your Honor, we believe that happened, it may be in the complaint, but roughly in 2014. And I may be, I could go back to that. Oh, sorry, sorry, sorry. Okay, yeah. Okay. So that by itself is, if nothing else, a particularly extraordinary surface. Before that happened, Frost filed at least 10 employment applications with Samsung and got no answer. That is correct, Your Honor. After he's no longer working, and there's a year that has gone by, he files and they answer. Oh, that's interesting. And inexplicable, unless the facts are credited. But we shouldn't really be talking about whether you credit them or not, because on a motion to dismiss, they should be credited. And in terms of Mr. Dahl in the newspaper article, he's on the human resources global leadership team. He's responsible for human resources worldwide. And the citation I gave you from the complaint is about the global human resources team, the same team alleged in the complaint. Now, in the district court opinion, the only conclusion is you never explained what the global human resources team is. That shouldn't have been required. But in any event, we did. We said this is the people who make the decisions about the hiring policies, and they made the decision that you can't hire in the U.S. unless you get approval in India. And secondly, there's a part of his comment that doesn't make sense if the district court and defendant's interpretation is applied, which is when he says, we have an agreement that applies across levels. Now, if inference is to be drawn in favor of the plaintiff, then I think that the fair interpretation is meaning corporate parent down to subsidiaries. But no one else has ever even offered an interpretation of what across levels might mean. And the last point I make, and I'll reserve my remaining time, is I think if you look at footnote 14 in Twombly, when the court says, we do not apply any heightened pleading standard, it then continues to say what the real issue is in this case and in Twombly, which was to say, we're not rejecting this complaint because it's insufficiently particular. We're rejecting it because when we consider all the facts in toto, they don't make the claim plausible. And that is not the case here. Thank you. I'd like to reserve the rest of my time. Thank you. May it please the court, John Elwood representing the Samsung defendants. I'll also be arguing on behalf of the LG defendants today. For two independent reasons, Judge Freeman correctly concluded that the plaintiffs here failed to plead sufficient non-conclusory facts of conspiracy or antitrust conspiracy to state a plausible claim for relief above the speculative level under ballot lining versus Twombly. The first of those two independent reasons is that the plaintiffs here provided none of the basic information about the supposed agreement that is at the basis of their antitrust conspiracy here. Now, they don't really argue that Kendall doesn't require that, but they do say Kendall is a misinterpretation of Twombly. And I'd like to quote from what the court said in Twombly in footnote 10 to show that this is not the base. This is something they said. These are the kind of facts we need in order to state a claim under Rule 8. They wrote there that, quote, the pleadings mentioned no specific time, place, or person involved in the alleged conspiracy. Hang on a second. I'm at footnote 10. Where are you in the footnote? I got to tell you, I don't know. My copy of the case is in my lit bag over there, and I have merely reproduced the quote here. OK. So start reading slowly, and I can probably find it. It's a long footnote. OK. Pleadings mentioned no specific time, place, or person involved in the alleged conspiracy. Hang on. OK. I haven't found it yet. OK. Oh, that's a long sentence. It starts, apart from identifying a seven-year span in which the Section 1 violations were supposed to have occurred, i.e., beginning at least as early February 1996, continuing to the present, close pen, the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies. And the upshot of that was they said, quote, a defendant seeking to respond to plaintiff's conclusory allegations would have little idea where to begin. So they suggested that you need some sort of information there. And even aside from Twombly, I think that's a pretty good indication of what. Let me ask you this. Do you agree with the characterization that the only allegations in Twombly were of parallel behavior? No. I disagree with that. As a matter of fact, Tell me what there was beyond that. Because as I read Judge Lynch's opinion in the district court, that's what he said. And that's how I read the Supreme Court's opinion, too. Oh, well, no. But I mean, they say if you look at 550 U.S. at 550, that's the easiest site to remember is they talk about an allegation. And moreover, if you look So slow down. So tell me where were you? Because the question is, is there more than parallel behavior? And you said there's something on page 550? Yeah, there was a conclusory allegation. So what is there on page 550? Here, I'll cite, I think Iqbal is even clearer on that. No, stay with Twombly, please. Okay, sure. They say the complaint alleges that the ILEX So where are you? 550 U.S. at 550. Okay. The complaint alleges that the ILEX, incumbent local exchange carriers, conspired to retrain, restrain trade in two ways. So that's one place. And there's other examples Wait, wait, wait a minute. I'm asking you whether there's anything other than parallel behavior. And then they say, the next sentence is, plaintiffs say first they engage in parallel conduct. Tell me where there's anything other than parallel conduct that's alleged. I'm saying that they basically made conclusory allegations of a conspiracy just like they did here. And that becomes a little bit clearer, I think, also, if you look at Iqbal. And if I could just quote you something from Iqbal. No, no, you're sliding away from me. The question that's been raised here is, with both respect to Kendall and with respect to Twombly, is that the only allegations are of parallel behavior, then you need more. But I'm hearing, at least I think I'm hearing, you're saying there's more than an allegation in Twombly than merely an allegation of parallel behavior. Is that what you're representing to me? That's correct. And there was also my question then is, where is the allegation of more than parallel behavior? Well, it's a conclusory allegation of conspiracy, which I add is exactly what they say here. If that's the answer, you've not told me that there's anything other than an allegation of parallel behavior. Well, I think that the only... No, I think that you're right. But there are conclusory allegations of conspiracy in Twombly. Of course there are. Right, exactly. But there are no factual allegations of anything other than parallel behavior in Twombly. No, I would agree with you on that. But I think that there's also not anything different here. And if you look at Iqbal, they said the same basic thing that there's... I'm sorry, that there's conclusory allegations of conspiracy followed by that. But if you look again at footnote 10, they're saying this would be right out except for the allegations of parallel conspiracy. Because they said, essentially, Justice Souter's point of footnote 10 is that if they weren't alleging parallel conduct, this is exactly what they would have to prove. This is the basic facts. You've got to say who did what, when they did it, and where in order to make a basic claim under Rule 8. But this is not a parallel behavior case. This is a case where there's an allegation that there's a no poaching contract. And let me review for you what's in the complaint. And I'll take it as true for now. We have Mr. Frost. He's filed at least 10 employment applications to Samsung while he's employed by LG. He gets no response. He gets a cold call from a recruiter saying, would you be interested in working for Samsung? That very same day, the recruiter calls back and says, oh, sorry, I made a mistake. There is an agreement that I can't poach. He then, after he's no longer working for LG for more than a year, he applies. He gets a response. He has several interviews. Mr. Ra, he applied for positions at Samsung while employed at LG. He gets no response. An acquaintance, a Mr. S in financial management at LG, tells him that there's a no poaching agreement. His co-workers, not specifically identified, tell him there's a no poaching agreement. The Economic Times publishes a story saying there is a poaching agreement in which we have quotations from Mr. Dahl saying, yeah, there's a no poaching agreement. That's a lot of specific allegations that there's a no poaching agreement, including Mr. Dahl saying, and at the end of a year, it's OK, which is exactly what then happened for Mr. Frost. I'm going to have to address that in pieces because, again, there are two different layers here that Judge Freeman said they didn't do. And if you look at Twombly, they specifically said, if it weren't for these allegations of parallel conduct, this is the kind of information they would have to give if they're going to allege a direct conspiracy. And they haven't provided any of that. And I won't add any more to that other than to say that this court, if you don't like Twombly, then there's INRI Musical Instruments and Equipment Antitrust Litigation, where they said that is what people must show. They haven't done that. So, I mean, that is layer one. So let's go to layer two, which is the allegations. And what we're saying is that all we have basically are, you know, conclusory allegations of the statement in India together with what happened to two people employed not by both companies, but only by LG. And when you normally have to show, you know, parallel conduct, they haven't shown parallel conduct. They don't even have attempted to say that. This is not a parallel conduct. No, but I mean... Please don't interrupt. This is a no coaching case. That's correct. But they haven't shown anything to say that Samsung people had the same trouble getting hired at LG. They've only said people from LG have trouble getting hired at Samsung. And again, only two employees there. But first, let's start with the statement in India. First of all, if you look at the article on its face, it addresses labor conditions in the Indian market. And if you think I'm being uncharitable about that, look at the first complaint. The first complaint specifically disavowed the idea that they were saying anything about the U.S. market. They said this was the Indian market only. That's supplemental excerpts of record 104, paragraph 76. And so you combine that with cases like... And it may have been legal in India, which is a pretty good reason why you'd have it in India and nowhere else. Then you have cases like, you know, the INRI elevator antitrust litigation out of the Second Circuit, where they say, you can't just say, oh, they did illegal and a competitive conduct in another country. You have to show why it's also applying here. And one thing they never pled, although they say that they are centralized in Korea, they never said these companies have the same policies, labor policies everywhere. So there's no reason to believe that just because they had it there, it went up to Korea and went back down to the United States. That's something they never allege. And then you get to the comments about the people. Can I... I know you're in... But just to take that piece of it, what about the fact that Mr. Dahl was on the global HR? What do we make of that? Well, again, they haven't alleged any reason why, you know, simply because he's there. I mean, sure, you know, he's HR guy for a big company, but it doesn't mean just because they're all together that his policy... You know, we haven't really argued with the fact that because, you know, they're with allegations that it's decided at the top. But they've never, you know, said, oh, but they have to have it in this country, they got to have it in all other countries. Because again, it doesn't appear to be illegal in India. Then you get to their allegations in this country. And again, their allegations in this country all concern people from LG to people from LG trying to get jobs at Samsung and striking out. And they're trying to allege from that a global conspiracy and unlock, you know, the doors to worldwide discovery based on those two people. And I think it's telling when you're trying to decide what do these allegations mean? If you have to have some sort of reason to believe that these people have some basis for knowing. I just want to point out their allegations about S. S is the person from Samsung said, you know, who they attribute in the current version of the complaint. You know, Mr. Ra learned from S that these, that neither company lie from each other. Well, if you look at the last version of the complaint, what they actually, what he actually said at that point was, quote, we do not hire people from LG. And that looks like a unilateral statement about what Samsung does. And from that to the next version, it becomes Ra learned from S that Samsung and LG do not hire each other's employees. Now, if they're claiming direct evidence, what direct evidence is, if you look at cases like, I think it's, everybody requires direct evidence to actually have everything right in it. You can't have inferences. That's Birch versus Milberg, which is a third circuit case. But every case is basically the same thing. You can't have inferences. And built into this is now a layer of inference. Either Mr. Ra or plaintiff's counsel inferred from, we do not hire people from LG, that there's actually an agreement. And now they say that they learned from S that Samsung and LG do not hire each other's employees. And so we have this layer of speculation. What they've done is they've taken the speculation out of the conclusive restatements like they had in Twombly. And instead, they're putting in the mouths of people without saying why those people have any basis for knowing that. And you just can't do that. I mean, William Twombly could have, sure, gone out to a bar where there were Bell Atlantic linemen and heard some people shooting off their mouths about how they're trying to keep the other companies down, the competitive local exchange carriers down. But just because they would have done that wouldn't have made it any better. Because in order to make it plausible, you have to provide some basis why these unnamed people had any basis for knowing what was going on. Otherwise, as the judge below said, at 42 and 43 of the experts of record, it is just speculation. That it could be just a rumor mill, it could just be a water cooler talk. And I think that there's all the more reason to believe that because of allegations in their own complaint. After all, they say at page 75, paragraph 108, that the agreement, the actual agreement, was, quote, kept secret from all but only the most senior executives of LG and Samsung and their subsidiaries. And so- It doesn't sound like much of a secret if the recruiter calls back and says, I can't do it. Well, again, but we don't know what exactly they're relying on for that. There are all sorts of crazy rumors in the world that have no basis in fact. Maybe they were just seeing, maybe they saw people, because when you're dealing with people on intellectual property, there are a lot of stumbling blocks to hiring people from one to the other because there might be non-competes, there might be non-disclosure agreements, and so it's very hard hiring from one tech company to another. And they might be inferring from that all on their own without anybody in any position to say, oh, they don't like to hire from each other. And one thing leads to another, and they say, oh, I'm not supposed to hire from those people. But they know exactly who that woman was. She reached out and contacted Mr. Frost through LinkedIn, so she has a LinkedIn profile. You could look at her and see, you know, what exactly is her background. None of that information is pled. They could have called her up and said, well, tell us about all your background dealing with Samsung, and given us some reason to believe that the words she was saying had any more import than just you or I holding forth about something we heard at the bar. Wouldn't discovery solve some of those problems? Again, first of all, they have to meet a minimum level in order to get discovery.  Despite what Mr. Williams said, this is the way he characterized his discovery for the court below. Some of the information produced in discovery would permit us to provide more information to the court that would be further indicative of the existence of a conspiracy we allege, unquote. So he obviously thought it was somewhat helpful. And again, this is what they asked for. And there's no allegation that, you know, we didn't produce, we produced 3,000 pages of stuff. Quote, they asked for all of LG's documents relating to any written or unwritten agreement or understanding regarding the hiring, recruiting or retention of employees, unquote, between it and Samsung. And did you produce that? We produced it. And after all of that, they didn't add any more information. There were no allegations of LG Korea saying don't hire anybody from Samsung. Did they move to compel it all down below? I don't believe so, but I honestly, I don't know the answer to that. So, I mean, again, we have an allegation of a global conspiracy that boils down to a complaint, or I'm sorry, a newspaper article that they themselves said involved the Indian market before. They're trying to improve it now. But again, they're just drawing inferences out. They're putting, they're baking into the complaint inferences that they made, which, you know, they're inferences. They're still inferences that are not direct evidence. And the experiences of two people who work for LG, again, we don't have any evidence of people from Samsung trying to get hired at LG and striking out. As it happens, I mean, a couple hours in LinkedIn, and you could find plenty of people. And if, you know, either they weren't, you know, they weren't doing adequate investigation, or they didn't like what they would find, because, I mean, it's all out there. And it's a simple matter to find whether or not there are these people happening or not. As it happens, there are plenty of people who go both ways. If there are no further questions. Can I ask one further question? Please, Judge Maloney has a question. What types of allegations do you think would survive Twombly and Kendall? I think, for example, in this case, if they had pleaded either some more detail, like in the Inri potato, fresh and processed potatoes, they pleaded every fact there. In the Tunica web design, they pleaded every fact there. And in fact, they had an ill-advised email from one of the conspirators to the victim. And in this case, if they would have just pleaded some basis for the people who are alleging there's a conspiracy, some basis for them to know that it happened. That the headhunter had a long experience that she had heard from senior Samsung officials. Or, you know, basically, something to let us know there was a there there. That it wasn't just speculation layered upon speculation. Thank you. Thank you. Thank you, Your Honors. I have a minute 35 and a lot of points I'd like to say. So first, we never say Kendall's wrongly decided. We explicitly say in our opening brief that it was correctly decided. And it stands for the principle that parallel conduct without more is insufficient. Second, the purpose of notice pleading. Can I ask you, I know, and if we need to give you more time, but this is an important point to me, whether there was direct contact. In footnote 13 of Twombly, it says, the complaint quoted a reported statement of Quest CEO, Richard Notebart, to suggest that the Ilex declined to compete against each other, despite recognizing that it, quote, might be a good way to turn a quick dollar. This is only, but my question is, would that be evidence of direct, that would be direct evidence, wouldn't it? What I just quoted, a statement from the CEO. In fact, it's actually pretty, it's more persuasive evidence than what you have in this case, which is a statement by some person in India. And I apologize, Your Honor, was it footnote 13? Footnote 13 in Twombly. Which is very long, and I'm trying to find it. Yeah, well, 13's not long, but. Let me interrupt for just a minute. Don't feel pressed on time. We'll ask and answer as long as we need to get the points made. So don't feel pressured. So Your Honor, here would be my impression of this footnote is, I don't think it was direct evidence, because if you read it, the only thing in quote is the quote, it might be a good way to turn a quick dollar. But what the text says is that the complaint used that to suggest that there was an agreement. So it's not clear from that, that they actually. I don't know how that's any different than what you have here. I mean, you have direct evidence that, I mean, this seems in the same vein of direct evidence that you're using, except this came from the CEO of the company, and you have evidence or allegations publicly made by somebody in India. Respectfully, I think it's slightly different. If the quote began with the ILECs declined to compete against each other, then that would be direct evidence. If it only says might be a good way to turn a quick dollar, that's a lot closer to circumstantial. All right. Although not to belabor the point, but it's closer to circumstantial, but that's the same. I've put direct and circumstantial in the same bucket as compared to parallel conduct. And I think that's fair because I think parallel conduct, which Twombly undoubtedly was, as the Ninth Circuit has repeatedly said, including in musical instruments, requires something more because it's just based on parallel conduct and a suspicion that that wouldn't happen absent an agreement. Here, and I want to comment, the purpose of notice pleading is to give notice of what it is you have to defend against. And the argument is, we have no idea. Plaintiffs never said. The agreement is exactly what the complaint says, and we've never been mysterious. Mr. Dahl said it. LG and Samsung have an agreement across levels that we will not hire unless a year has passed since the end of appointment, which is precisely what the other facts in the complaint say. There's only two companies. It isn't very hard for these two companies to know what it is they might need to do to defend this case, given we've given employee names. There's only two locations for each of Samsung and LG in the U.S., one in Silicon Valley and one in New Jersey. This is not Twombly or Kendall, where you had massive groups of defendants alleged somewhere to have made an agreement, but with no specific allegation of the agreement, and therefore that was not proper notice. But here, we have put in what is direct evidence. We've put in circumstances that can't be explained in the absence of an agreement. And finally, this is a motion to dismiss. And access to the courtroom, the ability to go to a court, plead a claim and have discovery is critical to our system, as is the Sherman Act since 1894. I take your point. Could you address what we just heard that you had asked an interrogatory and jurisdictional discovery? I understand it was jurisdictional discovery. So it's more limited scope. But you asked for evidence of any agreements and none came up. I would love to answer that first. As we know, it's waived. They never made this argument in the district court, period. No, but that's not the... Hold on a second. That's not the point. The point is you've asked this. So just as a practical matter, if we're going to say, no, look, you need to go back and get more evidence, what more do you think you're going to get? Why didn't you... Did you move to compel? Well, let me answer the first question and I'll come to the next two because I think there were three. So first of all, the court, this court, should not be making a ruling based on something not in the record. So yeah, in the record is what we asked for. Not in the record is what they gave us. I say not in the record. Earlier, you said not in the ER. The ER and the record are two different things. Understood. So is it not in the record or it is not in the ER? In the ER before this court, there is nothing to support the assertion. What about the record? They did not give us the things they said they gave us. They objected. We met and conferred. They gave us less. And because, Your Honor, we were only permitted jurisdictional discovery and they objected to it saying merits is not jurisdiction. And I understand I'm outside the record, but I want to be responsive. No, no, I asked you what was in the record. Yeah. And I've differentiated between the ER, which is what you prepared for our convenience and what's in the record. And of course, we can look to the underlying record. So I'm only asking what's in the record. Understood. And the record is we were permitted jurisdictional discovery. They objected to merits discovery and they did not give us what we asked for. I think if there is time, my final point would simply be that from the time of Twombly, there's been a sea change in civil procedure, particularly in antitrust cases. None of that, though, has changed either how a motion to dismiss should be decided nor the importance of civil enforcement of the antitrust laws. The decision here, if upheld, applying a heightened pleading standard that could never be answered by a civil plaintiff before discovery, would frustrate the policy that Congress had when it said, we want to incentivize private plaintiffs to enforce the antitrust laws for the benefit of consumers in our society. And that's the great risk. Thank you, Your Honors. Okay. Thank both sides for their helpful arguments. Frost versus LG Electronics submitted.
judges: W. Fletcher, R. Nelson, Molloy